UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| XIAOLONG HUANG,<br><br>Petitioner,<br>v.<br><br>WARDEN OF NORTHWEST ICE PROCESSING CENTER et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03682-DGE<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO.1) |

Before the Court is Petitioner Xiaolong Huang's petition for writ of habeas corpus. (Dkt. No. 1.) For the reasons discussed herein the Court GRANTS the petition.

## I. BACKGROUND

### A. Factual Background

Petitioner is a citizen of China. (Dkt. No. 7-1 at 2.) Petitioner entered the United States on August 8, 2008, on a B1/B2 visitor visa. (*Id.* at 3.) He has remained in the United States since and is the father of two United States citizen children, ages 10 and six. (Dkt. No. 1 at 49–50.)

An immigration judge ordered Petitioner's removal on December 15, 2011. (Dkt. No. 6 at 1.) His removal proceedings were later reopened but he again was ordered removed to China on November 14, 2019 after Petitioner's application for asylum and withholding of removal was denied. (Dkt. Nos. 6 at 1; 7-1 at 4.) The Board of Immigration Appeals ("BIA") affirmed the removal order on December 10, 2025. (Dkt. Nos. 1 at 2, 35–38; 6 at 2.) Petitioner has sought to reopen his removal proceedings, but his motion to reopen remains pending before the BIA. (Dkt. Nos. 1 at 2, 15–16; 6 at 2.) At present, Petitioner's removal order remains in effect and there is no evidence of any stay of removal. (*Id.*)

Despite the finality of the removal order, Petitioner remained at liberty for eighteen years until September 21, 2026. (Dkt. Nos. 1 at 2; 6 at 2; 7-1 at 3–4.) On that date, Petitioner reported to the Seattle Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") Field Office "in accordance with his order of supervision [("OSUP")] reporting requirements." (Dkt. No. 7-1 at 3.)[1] The decision to detain Petitioner was "[b]ased on the available information," which indicated Petitioner "remained in the United States well beyond his authorized period of admission." (*Id.*) Respondents determined, Petitioner's "prolonged overstay, lack of lawful status, and absence of any approved immigration benefit outweighed the favorable factors identified during the custody redetermination." (*Id.* at 4.) At that time, there was no indication Respondents had taken any steps to remove Petitioner. (*See id.* at 3–4.)

Petitioner remains in custody at the Northwest ICE Processing Center. (Dkt. No. 6 at 2.) As to Petitioner's removal, Respondents offer that they are "in the process of effecting removal.

[1] In contradiction to the comments made in the Form I-213, Deportation Officer Christopher Hubbard identifies the records he reviewed did not indicate any previously issued order of supervision. (Dkt. No. 6 at 2.)

ERO has a valid Chinese passport for Petitioner and believes he can be removed to China in the reasonably foreseeable future." (*Id.*)

**B. Procedural History**

Petitioner filed the present petition on September 29, 2026. (Dkt. No. 1.) Petitioner asserts Respondents "revoked Petitioner's release without giving him notice of the reasons for revocation and without a prompt informal interview, as required by 8 C.F.R. §§ 241.4([i])(1) and 241.13(i)(3) in violation of the Due Process Clause of the Fifth Amendment." (*Id.* at 8–10.) Petitioner also argues his detention is indefinite under *Zadvydas v. Davis,* 533 U.S. 678 (2001) because "removal is not significantly likely in the reasonably foreseeable future." (*Id.* at 10–11.)

Respondents filed a response on October 14, 2026. (Dkt. No. 5.) Respondents, contend "Petitioner's detention is constitutionally and statutorily lawful . . . pursuant to 8 U.S.C. § 1231(a)(6) and his detention is not indefinite under *Zadvydas*." (*Id.* at 4–6.) Respondents further argue that Petitioner "failed to meet his initial burden" to provide good reason that there is no significant likelihood of removal in the reasonably foreseeable future. (*Id.* at 5–6.) Lastly, Respondents contend that "Petitioner failed to show that his detention was inconsistent with due process" and that "[h]is challenge to ICE's alleged violation of regulations governing the revocation of OSUPs do not apply in this case because Petitioner was never placed on an OSUP." (*Id.* at 6.)

Petitioner filed his reply on October 28, 2026. (Dkt. No. 8.) He elaborates that he was subject to an OSUP and its revocation and his re-detention without a hearing violated due process. (*Id.* at 4). He further argues that removal is not likely or imminent and that Respondents have not provided any evidence suggesting otherwise. (*Id.* at 6.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

The detention, release, and removal of noncitizens subject to a final order of removal is governed by INA § 241, codified at 8 U.S.C. § 1231. The requirements of the statute take effect once a final order of removal of a noncitizen is entered by an immigration judge. The removal period begins, relevant here, on "[t]he date the order of removal becomes administratively final[,]" *id.* § 1231(a)(1)(B), which in this case was December 10, 2025, when the BIA denied Petitioner's claims for relief and ordered his removal. (Dkt. Nos. 1 at 2, 35–38; 6 at 2.)

The first 90-day period following the entry of the order of final removal is called the "removal period." *Id.* § 1231(a)(1)(A). Detention is mandatory during that period. *Id.* § 1231(a)(2). However, once the 90-day removal period has expired, continued detention is at the discretion of the Attorney General. The Supreme Court has held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas* 533 U.S. at 699 (2001). As the *Zadvydas* Court recognized, "[a] statute

permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690.[2] "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* The *Zadvydas* Court concluded, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

## III. DISCUSSION

### A. Petitioner's Re-Detention is Unlawful

The government's discretion to revoke the release of a noncitizen whose removal was previously found to be unlikely in the reasonably foreseeable future is limited. Specifically, a noncitizen "who violates any of the conditions of release may be returned to custody." 8 C.F.R. § 241.13(i)(1). Similarly, the government "may revoke an alien's release . . . if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Re-detention pursuant to 8 C.F.R. § 241.13(i)(1–3) requires notice and an opportunity for the noncitizen to be heard. 8 C.F.R. § 241.13(i)(3) (setting forth that the noncitizen is notified of the reasons for release, the noncitizen must have the opportunity to respond by "submit[ing] any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future").

---

[2] Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). Thus, the Supreme Court has held "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–694 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896)).

Here, Respondents' decision to re-detain Petitioner did not comply with the regulatory requirements of 8 C.F.R. § 241.13(i). First, contrary to Respondents' assertions, the evidence indicates that Petitioner was released on an OSUP; otherwise, there would have been no reason for him to attend the required immigration check in on September 21, 2026. In fact, Respondents' exhibit, Form I-213, states that Petitioner was arrested at the Seattle ICE ERO Field Office when he reported there "in accordance with his order of supervision reporting requirements." (Dkt. No. 7-1 at 3.) Accordingly, Petitioner was at least entitled to the protections afforded under 8 C.F.R. § 241.13(i)(3) when immigration officials revoked his OSUP. The record does not indicate, and Respondents do not contend, that Petitioner was afforded a notice of revocation, an informal interview, or chance to respond. Hence, Petitioner's re-detention did not comply with 8 C.F.R. § 241.13(i)(3).

Second, at the time of detention, there was no indication of changed circumstances suggesting that removal would be likely in the foreseeable future. The Form I-213 makes no reference to likely removal in the foreseeable future and no reference to the regulations or violations of supervised release. (*See* Dkt. No. 7-1 at 2–4.)[3] Rather, Respondents' revoked Petitioner's OSUP on a finding that he was a "flight risk."[4] (*Id*. at 3–4.) As a result, the Court concludes that Petitioner was released on an OSUP which ICE improperly revoked, thus violating 8 C.F.R. § 241.13(i).

**B. Petitioner's Detention Violates the Fifth Amendment Due Process Clause**

---

[3] The Form I-213 indicates that ERO's consideration of Petitioner's "prolonged overstay, lack of lawful status, and absence of an approved immigration benefit outweighed the favorable factors identified during the custody redetermination." (Dkt. No 7-1 at 4). All of this was known to ICE for years before Petitioner was released into the community and does not indicate any change of circumstances.

[4] Despite this determination, Respondents fail to present evidence or argue in their briefing that Petitioner is a current flight risk.

*Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (quoting *Zadvydas*, 533 U.S. at 701). If the noncitizen meets this burden, then the respondents must "introduce evidence to refute that assertion." *Id.* (first citing *Zadvydas*, 533 U.S. at 701; and then citing *Xi v. I.N.S.*, 298 F.3d 832, 839–840 (9th Cir. 2002)); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court.").

Here, Petitioner provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. While Petitioner has not yet been detained for the presumptively unreasonable six month period, the *Zadvydas* grace period ended "six months following the entry of the order of [Petitioner's] removal and three months following [his] 90-day removal period[.]" *Tran v. Bondi*, Case No. CV-25-01897-JLR, 2025 WL 3140462 at *3 (W.D. Wash. Nov. 10, 2025). Petitioner was ordered removed in absentia in 2011, followed by another removal order in 2019. (Dkt. Nos. 1 at 2, 35–38; 6 at 2; 7-2 at 2.) The 2019 removal order became administratively final on December 10, 2025—eleven months ago. (Dkt. Nos. 1 at 2, 35–38; 6 at 2.) "Because more than six months have elapsed since the entry of the order of removal, the burden shits to Respondents" to show the Petitioner will likely be removed in the foreseeable future. *Tran*, 2025 WL 3140462 at *3 (citing *Zadvydas*, 533 U.S. at 701).

Respondents argue Petitioner can be removed in the "reasonably foreseeable future" because they have obtained a "Chinese passport." (Dkt. No. 6 at 2.) However, this one-line conclusory statement is insufficient. Respondents offer no evidence they have attempted to contact the Chinese consulate, confirmed Petitioner can be repatriated, or scheduled a removal flight. Moreover, Respondents fail to substantiate the alleged passport with any information relating to when it was issued or obtained, when it expires, or proof of its existence. Finally, Respondents provide no information as to what circumstances changed between December 2025 and today that indicate it is now reasonable to expect Petitioner can be removed to China. Respondents have not shown that Petitioner's removal is even possible much less likely in the foreseeable future.

Because there is not a significant likelihood of removal in the reasonably foreseeable future, Petitioner's detention is no longer permitted under *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful, and his release is appropriate. *See Yuksek v. Bondi*, Case No. 2:25-CV-02555-DGE-GJL, 2026 WL 60364 (W.D. Wash. Jan. 8, 2026) (allowing release upon a finding that removal was not reasonably foreseeable).[5]

## IV. ORDER

[5] Though the Court finds the present record does not support the conclusion that Petitioner is likely to be removed in the foreseeable future, it may be soon that Respondents can meet this standard. It may be that Respondents will soon be able to establish concrete steps taken to remove Petitioner along with a projected timeline for his removal. In such case, and absent Petitioner is successfully reopening his removal proceedings, Petitioner is on notice that there may be a basis in the future to detain Petitioner for removal.

For the reasons set forth above, the Court GRANTS Petitioner's writ of habeas corpus (Dkt. No. 1) and ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **TWENTY-FOUR (24)** hours of this order and return him to the same conditions of supervision that applied before September 21, 2026.
2. Petitioner SHALL not be re-detained, absent urgent circumstances or a clear legal basis for detention, without first complying with 8 C.F.R. § 241.13. Neither the record nor the arguments presented by Respondents in this matter established urgent circumstances or a clear legal basis justifying re-detention without a pre-deprivation hearing.
3. Within **TWENTY-FOUR (24)** hours of this order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

Dated this 13th day of November, 2026.

David G. Estudillo
United States District Judge